UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Malachi I. Yahtues</u>

    v.                                 Civil No. 16-cv-174-SM
                                        Opinion No. 2018 DNH 192

<u>David Dionne and</u>
<u>Willie Scurry</u>

## **O R D E R**

Before the court in this case are the following cross-motions for summary judgment filed by defendants, Hillsborough County Department of Corrections ("HCDC") Superintendent David Dionne and HCDC Capt. Willie Scurry, and plaintiff Malachi Yahtues:

- "County Defendants' Motion for Summary Judgment: 'PLRA' Lack of Exhaustion and Qualified Immunity (Doc. No. 130);

- "Plaintiff's Partially Assented-to Motion to County Defendant's [sic] Preliminary Motion for Summary Judgment: 'PLRA' Lack of Exhaustion and Qualified Immunity and Plaintiff's Cross-Motion for Summary Judgment" (Doc. No. 138); and

- "Defendants David Dionne's & Willie Scurry's Motion for Summary Judgment, Per FRCP 56" (Doc. No. 180).[1]

---

[1] The summary judgment record in this case also includes: "Defendants David Dionne's & Willie Scurry's Objection to Plaintiff's Motion for Summary Judgment [#138]" (Doc. No. 175); "Defendants' Notice of Assent to Plaintiff's Voluntary Non-Suit of Designated Claims, if Entered 'With Prejudice,' Per FRCP 41(a)" (Doc. No. 143); "Defendants' Response to Plaintiff's 'Statement of Undisputed Facts' (Court Doc. No. 138-1)" (Doc. No. 176); "Defendants' Notice of Late Authority (Re: Qualified Immunity, Court Doc. No. 130)" (Doc. No. 177); and "Plaintiff's Response to Defendant's Notice of Late Authority (Re: Qualified Immunity, Court Doc. No. 130)" (Doc. No. 179).

**Background**

I. <u>Procedural History – Claims Against HCDC Defendants</u>

Yahtues, presently an inmate at the New Hampshire State Prison, brought this 42 U.S.C. § 1983 action, alleging that the defendants violated his federal Constitutional and statutory rights and his rights under state law, when he was a pretrial detainee at the HCDC from June 25, 2014 to August 1, 2016. After conducting the preliminary review of plaintiff's initial complaint (Doc. Nos. 1, 12) pursuant to 28 U.S.C. § 1915(e)(2), 1915A(a) and LR 4.3(d)(2), the court found that Yahtues had asserted claims alleging violations of:

> (1) [Yahtues's] Fourteenth Amendment right to adequate medical and mental health care; (2) his Fourteenth Amendment right to sanitary and safe conditions of confinement; (3) his First, Sixth, and Fourteenth Amendment right to meaningful access to the courts, including access to legal resources; (4) his First Amendment right of association; (5) his First Amendment rights, and rights under the Religious Land Use and Institutionalized Persons Act [RLUIPA], to religious items, materials, and a religious diet; and (6) his rights under state law implicated by the facts and events that form[ed] the basis of the federal claims asserted in the complaint.

June 21, 2016 Order (Doc. No. 13), at 2 (footnote omitted). The court directed service of process upon Drs. Matthew J. Masewic and Christopher Braga (the physicians who contracted with the HCDC to provide medical care to its inmates) and the HCDC defendants, namely, Dionne, Scurry, (former) HCDC Corrections Officer Matthew Ritvo-Cabezas, and HCDC Health Services Administrator Denise Ryan (now Hartley), "without prejudice to

defendants' filing of a motion to dismiss on any proper basis." Id.

Yahtues filed an amended complaint on October 7, 2016 (Doc. No. 73). The magistrate judge conducted a preliminary review of the amended complaint and determined that Yahtues had asserted "fifteen numbered claims" in that amended complaint, and named the same defendants identified in the first preliminary review, with the exception of Dr. Braga.[2] Feb. 24, 2017 Order (Doc. No. 96), at 1. Concluding that one or more cognizable claims for relief were stated in that amended complaint, the court deemed that pleading to be the operative complaint and directed defendants to answer or otherwise respond, "without prejudice to defendants' ability to file a motion to dismiss on any proper basis." Id.

After holding a preliminary pretrial conference, the magistrate judge issued a scheduling order (Doc. No. 124) in this case, providing separate deadlines for two types of summary judgment motions, setting a November 15, 2017 deadline for the filing of summary judgment motions based on exhaustion and immunity, and a May 21, 2018 deadline for the filing of other

---

[2]After preliminary review was conducted of the initial complaint, Yahtues filed an assented-to motion (Doc. No. 42) seeking to drop Dr. Braga as a defendant from this case, which the court granted. See Aug. 1, 2016 Order. In February 2018, plaintiff and defendant Dr. Masewic jointly filed a stipulation dismissing the claims against Dr. Masewic with prejudice. See Feb. 23, 2018 Stipulation (Doc. No. 165), at 1. The court approved that stipulation. See Feb. 23, 2018 Order.

3

summary judgment motions. See June 2, 2017 Order (Doc. No. 124), at 2.

On November 15, 2017, the HCDC defendants filed a motion for summary judgment (Doc. No. 130), requesting the following relief:

> 1. That "this honorable court conduct the preliminary review not applied earlier in this case." Nov. 15, 2017 Cty. Defs.' Prelim. Motion for Summ. J. (Doc. No. 130), at 1;
>
> 2. That the court grant summary judgment in the HCDC defendants' favor as to the plaintiff's "mental health based deliberate indifference theorem [sic]" and the claims asserted against defendant Ritvo-Cabezas, on the basis that plaintiff had failed to exhaust his administrative remedies as to those claims, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), id.; and
>
> 3. That the court find "the defendants are entitled to the application and protection of qualified immunity," as to each of the claims asserted against them, id.

On December 21, 2017, Yahtues filed a cross-motion for summary judgment (Doc. No. 138).³ In that motion, Yahtues sought summary judgment in his favor on the claims in this case, and asked the court to allow him to voluntarily dismiss certain claims and defendants from this action, as follows:

> Plaintiff request [sic] the dismissal of the following claims:
>
> a) Against defendant Ryan and [Ritvo-Cabezas];
>
> b) Concerning poor ventilation;

---

³Yahtues's December 21, 2017 filing was also docketed separately as an objection to the defendants' motion for summary judgment. See Doc. No. 139.

c) In reference to typing up legal materials via type-
   writer;

   d) In respects [sic] to stressful living conditions;

   e) In respects [sic] to lies and bad conduct by
   officer's [sic];

   f) In respects [sic] to back ailments;

   g) In respects [sic] to serving the plaintiff
   repetitive meals;

   h) In respects [sic] to the [HCDC] giving out
   information to inmates for visiting schedule;

   i) In respects [sic] to threats by officer's [sic].

Dec. 21, 2017 Pltf.'s Obj. to Defs.' Motion for Summ. J. and Pltf.'s Cross-Motion for Summ. J. (Doc. No. 138), at 1-2.

Yahtues followed that request for voluntary dismissal with the following:

   Claims the plaintiff wishes to defend in respects
   [sic] to this action:

   a) Qualified Immunity;

   b) Denial of Law Library and Legal Assistant – Access
   to the Courts [in restricted housing unit and 2-B max
   segregation units];

   c) Denial of Religious Practices;

   d) Contaminated Kosher Food got the Plaintiff Sick;

   e) Bio-Hazard Soiled/Filthy Sheets, Blankets and
   Undergarments;

   f) Missing/Loss Mail[.]

Id. at 2 (footnote omitted). Notwithstanding his request to dismiss certain claims, Yahtues's objection/cross-motion for

summary judgment asserted the validity of each of the claims addressed in the defendants' motion.

Defendants filed a "Notice of Assent to Plaintiff's Voluntary Non-Suit of Designated Claims, if Entered 'With Prejudice,' Per FRCP 41(a)" (Doc. No. 43). In that notice, defendants noted that "the plaintiff's requests for dismissal and continued prosecution do not track all specific gravamen [sic] from the court orders." Jan. 9, 2018 Defs.' Notice (Doc. No. 143), at 3 n.2.

On January 29, 2018, defendants filed a "Stipulation (Clarification) of Claims being Pursued Against Hillsborough County and Its Employees" (Doc. No. 149), in which defendants stated, "Plaintiff has filed pleadings indicating his desire to forego/withdraw certain defendants and claims from this litigation. In response, counsel for the county defendants corresponded with Mr. Yahtues to clarify the defendants and claims he desires to pursue and those he has elected to forego." Jan. 29, 2018 Stipulation (Doc. No. 149), at 1. The stipulation then essentially reproduces the list, set forth above as 'Claims the plaintiff wishes to defend in respects [sic] to this action,' as "the claims and defendants which Mr. Yahtues has identified as the claims/theorem he is now pursuing, as to the county defendants." Id. That stipulation identifies the defendants against whom Yahtues asserts these claims as "only Hillsborough County, Superintendent David Dionne and Captain

Willie Scurry," states that plaintiff agreed to dismiss, with prejudice, the claims he had asserted against Denise Ryan (Hartley) and Ritvo-Cabezas, and to drop those defendants from this action. Id. at 2. That stipulation did not address the status of claims asserted in the amended complaint (Doc. No. 73) that Yahtues had neither sought to voluntarily dismiss, nor identified as claims he "wishe[d] to defend."[4] Doc. No. 138, at 2. This court approved that stipulation. See Apr. 5, 2018 Order.

II. Claims Presently Pending Against HCDC Defendants

The following claims are the claims presently pending in this action, as they were asserted in the amended complaint (Doc. No. 73),[5] and have not been dismissed by either the court,

---

[4]In their objection (Doc. No. 175) to plaintiff's cross-motion for summary judgment, filed after the stipulation was approved, defendants Dionne and Scurry identify certain claims asserted against them in the amended complaint (Doc. No. 73), as "abandoned." Some of those claims were explicitly dismissed in the stipulation, but some claims identified as "abandoned" were not addressed at all in the Stipulation or in Yahtues's request to dismiss claims from this case.

[5]After conducting preliminary review of Yahtues's initial complaint, the court found that Yahtues had alleged both First Amendment and RLUIPA claims alleging denials of Yahtues's right to practice his religion at the HCDC. Although, in his amended complaint (Doc. No. 73), Yahtues does not mention RLUIPA, Yahtues affirmatively stated that he intended to litigate his claims relating to his religious practices, and nothing in the amended complaint indicates that Yahtues intended to proceed only on a First Amendment claim while foregoing the related RLUIPA claim the court had already recognized in this matter.

7

the plaintiff's request for voluntary dismissal, or the parties' stipulation:

    1.   HCDC Superintendent David Dionne, as the individual in charge of the HCDC, the supervisor of HCDC correctional and medical staff, and who is responsible for reviewing all administrative appeals, violated Yahtues's rights, when Yahtues was a pretrial detainee at the HCDC, between June 25, 2014 and August 1, 2016, as follows:

        a.   Dionne violated Yahtues's First, Sixth, and Fourteenth Amendment due process rights to meaningfully access the courts when Yahtues was housed in segregation in the HCDC Restricted Housing Unit ("RHU"), or in Unit 2B/Maximum Security, by refusing to grant plaintiff's grievances and/or refusing to alter HCDC policies, resulting in:

            i.   The denial of Yahtues's physical access to the HCDC law library and to the assistance of a person trained to conduct legal research;

            ii.   The denial of adequate access to legal materials caused by allowing plaintiff to obtain such materials through a "page" system, in which Yahtues could receive copies of legal documents only by making a written request for the specific document; and

            iii. The denial of adequate opportunities to contact the attorney representing him in his criminal case.

        b.   Dionne denied Yahtues's right to humane conditions of confinement, in violation of the Fourteenth Amendment Due Process Clause, with regard to the HCDC's providing Yahtues with: used underwear soiled with urine, fecal matter, blood, semen, and vaginal secretions, resulting in Yahtues developing "jock itch," bedding soiled with urine, fecal matter, blood, semen, and vaginal secretions; and used footwear, resulting in Yahtues developing a foot fungus, by:

            i.   Refusing to change HCDC policy with regard to the provision of used underwear and footwear;

ii.  Failing to ensure bedding was properly
     laundered after receiving notice of the
     inadequacy of the HCDC's laundry procedures; and

     iii. Ignoring and/or denying Yahtues's request to
     provide Yahtues with new unused underwear and
     footwear.

2.   HCDC Captain Willie Scurry, in charge of HCDC
operations and programs, violated Yahtues's rights, when
Yahtues was a pretrial detainee at the HCDC, between June
25, 2014 and August 1, 2016, as follows:

     a.   On numerous occasions, Scurry violated Yahtues's
     First, Sixth, and Fourteenth Amendment due process
     rights to meaningfully access the courts when he:

          i.   Failed to adequately address Yahtues's
          grievances seeking legal supplies, access to the
          law library, and/or legal assistance; and

          ii.  Failed to provide a remedy on the numerous
          occasions when the HCDC lost or misplaced
          Yahtues's outgoing legal mail.

     b.   Scurry violated plaintiff's rights under the
     First Amendment Free Exercise Clause and RLUIPA by:

          i.   Failing to provide Yahtues with "proper"
          Kosher meals on numerous occasions;

          ii.  Providing Yahtues with rotten or spoiled
          Kosher food;

          iii. Denying Yahtues's grievances requesting
          religious headwear (a "kufi") and a prayer rug,
          on the basis that those items "are not part of
          [Yahtues's] religion";

          iv.  Denying Yahtues the ability to celebrate the
          Jewish holiday of Passover in both 2015 and 2016,
          by failing to provide Yahtues with items
          necessary to observe the religious requirements
          of that holiday; and

          v.   Denying Yahtues a Torah in RHU.

     c.   Scurry ignored Yahtues's request to have a Torah
     in RHU because inmates in RHU are only allowed to have

> New Testament Bibles, in violation of the First
> Amendment's Establishment Clause and the Fourteenth
> Amendment's Equal Protection Clause.
>
> 3.   Defendants Dionne and Scurry, acting with deliberate
> indifference, failed to ensure that Yahtues was provided
> with proper treatment for Yahtues's serious medical and
> mental health needs, in violation of Yahtues's Fourteenth
> Amendment due process rights.
>
> 4.   Defendants Dionne and Scurry endangered Yahtues's
> health and safety by failing to prevent Yahtues from being
> served spoiled food on a number of occasions, in violation
> of Yahtues's Fourteenth Amendment due process rights.

**Discussion**

I.   <u>Preliminary Review</u>

In their first summary judgment motion, defendants request that "this honorable court conduct the preliminary review not applied earlier in this case." Doc. No. 130, at 1. The court notes that the Magistrate Judge conducted a preliminary review of the amended complaint in this case that was consistent with 28 U.S.C. § 1915A(a) and LR 4.3(d)(2). <u>See</u> Feb. 24, 2017 Order (Doc. No. 96). After conducting the preliminary review, the magistrate judge found that Yahtues had asserted one or more cognizable claims for relief and directed that the amended complaint be served on the defendants "without prejudice to defendants' ability to file a motion to dismiss on any proper basis." <u>Id.</u> at 1. Accordingly, the defendants' first motion for summary judgment (Doc. No. 130) is denied to the extent it seeks an initial preliminary review of the amended complaint.

In the interest of screening the prisoner complaint to remove claims that fail to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(2), this court notes that Yahtues asserted his claims challenging the conditions of his pretrial confinement against Dionne and Scurry under both the Eighth and Fourteenth Amendments. Yahtues's claims concerning the conditions of his pretrial confinement arise under the Fourteenth Amendment Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). Accordingly, Yahtues's Eighth Amendment claims relating to his pretrial confinement are dismissed, leaving only his Fourteenth Amendment claims, as identified in this Order.

II. PLRA Exhaustion of Inadequate Mental Health Claims

Defendants seek, in their first motion for summary judgment (Doc. No. 130), judgment as a matter of law as to Yahtues's "mental health based deliberate indifference theorem [sic]" on the basis that Yahtues failed to exhaust such claims through the HCDC's administrative grievance procedure prior to filing this action, as required by the PLRA, 42 U.S.C. § 1997e(a).

A. Summary Judgment Standard

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also

Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). "An issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case." Xiaoyan Tang, 821 F.3d at 215 (internal quotation marks and citations omitted). "A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact." Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016). Once the moving party makes the required showing, "'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" Id. (citation omitted). "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'" Id. (citations omitted).

    B.    PLRA Standard

The PLRA, 42 U.S.C. § 1997e(a), states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held "that the PLRA exhaustion requirement requires proper exhaustion." Woodford v.

Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. (citation omitted) (emphasis in original). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Claims for which administrative remedies have not been exhausted are subject to dismissal. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002). A plaintiff's failure to exhaust administrative remedies is an affirmative defense as to which the defendants bear the burden of proof. See Jones, 549 U.S. at 216.

    C.    HCDC Grievances and Yahtues's Mental Health Claims

According to Dionne's sworn statement, attached to the defendants' first motion for summary judgment as an exhibit, at the HCDC:

> All grievances are initiated by submission of a request form and such forms must be provided to the floor sergeant/supervisor; this supervisor provides the inmate with the number-controlled grievance form (and follows up with the inmate if it is not returned) and receives such back (to avoid any claims that officers preclude inmates from submitting grievances); only supervisors [Sergeants or Lieutenants] investigate the issues set forth in grievances (but are not permitted to conduct investigations from grievances that involve them directly) and such results are forwarded to the Captain and ultimately to me, the Superintendent, per chain of command (though appeals of grievances are not, as I understand, required by law; nevertheless, I review all of these

13

>     to keep advised of issues arising at the jail).  A
>     copy of all grievances are [sic] permanently kept in
>     the inmate's file.

See Aff. of HCDOC Supt. David Dionne (Doc. No. 130-2) ("Dionne Aff.") (Doc. No. 130-2), at 2.  Dionne personally reviews and implements the HCDC's administrative grievance procedures.  See Dionne Aff. at 1.  In his affidavit, Dionne explains that "[t]he rules, documents and time frames governing [HCDC policies and procedures] are spelled out in the inmate handbook that is given to each detainee or inmate" when the inmate enters the jail, and that Yahtues received a copy of the HCDC inmate handbook.  Id. at 1.[6]

According to Dionne's affidavit, Yahtues used the HCDC's administrative grievance system to file seventy-four grievances while he was detained at that facility, and that all such grievances were filed in Yahtues's institutional file and retained by the jail.  See id. at 2.  Defendants argue that although Yahtues "articulated varied complaints on a number of topics and certain individuals, he did not identify deprivation of mental health care . . . in his submissions."  Defs. Motion for Summ. J., Memo. of Law (Doc. No. 130-1), at 6; see also Dionne Aff. at 2 ("I note that there are no grievances . . . regarding inadequate or improper mental health care.  From my

---

[6]Neither the handbook nor the documentation that Yahtues received the handbook are appended to Dionne's affidavit.

perspective, Mr. Yahtues failed to utilize our administrative grievance processes as to these particular claims.").

Dionne's affidavit does not include as an attachment, in support of that statement, all of the seventy-four grievances Yahtues filed in support of that statement. Rather, appended to Dionne's affidavit is "a list of [Yahtues's] grievances . . . showing 74 grievances and listing the division involved, the allegations and outcome." Dionne Aff. at 2. The list itself, however, is not sworn to, and neither defendants' motion nor Dionne's affidavit states who compiled the list, or what information was used to compile the list. Yahtues asserts that he in fact exhausted the administrative remedies available to him as to his mental health claims, see Doc. No. 138, at 1, and there is documentary evidence in the record that contradicts Dionne's assertion that Yahtues did not do so.

Attached to another filing in this case is a copy of HCDC Inmate Grievance Form ("IGF") No. 16-00092 (Doc. No. 48-6), completed by Yahtues on August 31, 2015. IGF 16-00092 is on the list of grievances appended to Dionne's affidavit. See Doc. No. 13-5, at 1. The list indicates that the "Allegation Topic" of the grievance is "Grieving classification to max," and includes no other information as to the contents of that grievances. Id. In the section of IGF 16-00092 in which the grieving inmate is to write a "[b]rief description of grievance (include where and when)," Yahtues wrote the following:

15

> I have mantel [sic] issues that have cause me money
> [sic] problems throughout my life And when I first
> came to the segregation, July 28, 2015, Due to these
> issues, refer to Disciplinary Report #15-1279, I was
> then evaluated by mental health Doctor, let off
> suicide watch and placed in RHU (Restricted Housing
> Unit) and then seen by the officer who handles
> classifications (Pronounced Bōu-WǍ) (Note I cant spell
> his name) This ofc doesn't [sic] Disciplinary hearings
> and works under ofcr Raymond who is the head of
> classification.  I was told by ofcr (Bōu-WǍ) that I
> will be placed in 2B Max and that my placement would
> not be a "punishment."  Around and about, 8-19-21-
> 2015, Ofcr Raymond came into this unit 2B and when I
> asked him to please place me in population, he
> responded with, "You can't behave in population, your
> [sic] being punished for your behavior."  I explained
> to him from the distance of my cell (cell #2119) and
> he was roughly 10-12 ft away from me, that I have
> mental issues I cannot control and this jail doesn't
> help me with medications, etc. and I was told I
> wouldn't be punished.  Mr. Raymond ignored me and
> exited the Unit.  I should be released to population.
> This is cruel and unusual punishment.  I've been
> housed numerous times in segregation because I suffer
> From Bi-polar, schizophrenia, personality disorder,
> etc.  And this jail won't help me.  Now I'm also being
> punished by being placed in an extended stay in
> segregation.  This issue has caused me mental,
> emotional and physical distress.

Doc. 48-6, at 1-2.  On the portion of IGF 16-00092 titled

"Captain's action," an unidentified officer responds to Yahtues

as follows:

> As cited in your inmate handbook (pg. 17) under
> section titled: Grievance Procedure – "All decisions
> made by the county correctional facility's
> classification department or disciplinary hearings
> officer cannot be appealed through the grievance
> procedure.  Based on, but not limited to, your
> criminal charges, bail and forty-nine (49) misconducts
> (to include numerous serious and major violations) you
> are currently classified to the max unit.  I have
> forwarded a copy of this grievance to HAS Ryan (Health
> Services) as you referenced medical concerns within
> the body of this grievance.

16

Id. at 1.  The form then indicates that Dionne further responded to Yahtues in writing, stating "Inmate is classified to max.  He will be reviewed.  No further action required."  Id.

Yahtues's grievance, submitted on IGF 16-00092, plainly complains that he suffers from serious mental health problems, and that the HCDC is not providing him with help for those problems.  Further, the description of IGF 16-00092 in the unsworn list of Yahtues's grievances (Doc. No. 130-5), given the lack of indicia of the accuracy of its contents, is insufficient to dispute Yahtues's sworn statement, which is supported by documentary evidence, that he properly exhausted his mental health claims through the HCDC's administrative grievance procedure.  Accordingly, defendants have failed to meet their burden on their PLRA defense.  Defendants' motion for summary judgment (Doc. No. 130) is thus denied, in part, to the extent it argues that Yahtues failed to exhaust his claims alleging he was denied adequate mental health care at the HCDC.

III. Summary Judgment Motions (Doc. Nos. 130, 138, 180)

The parties' motions for summary judgment (Doc. Nos. 130, 138, 180) have been rendered moot, in part, to the extent they concern claims that differ from those that have been identified by the court in this Order as remaining in this case.  This court declines to address the merits of the parties' remaining

arguments in their motions for summary judgment (Doc. Nos. 130, 138, and 180) at this time, as this Order includes the first comprehensive list of the claims remaining in this case, as identified by the court.  This court anticipates that the parties may disagree with the court's identification of the pending claims and may seek to file motions to amend or motions for judgment on the pleadings in advance of proceeding on motions for summary judgment, or they may conclude that they must undertake additional discovery as to those claims. Furthermore, the summary judgment record at this time is voluminous and will likely be substantially reduced once the parties remove from their briefs materials relating only to the claims mooted by the court's identification of the claims remaining in this action.  Therefore, in the interests of justice, judicial efficiency, and fairness to the parties, the pending summary judgment motions are generally denied, except as otherwise noted in this Order, without prejudice to the parties' ability either to file new motions for summary judgment, or to renew their previously-filed motions for summary judgment.

IV.  Pretrial Schedule Revisions

Counsel for defendants and plaintiff shall exchange proposed revisions to the pretrial schedule in this case, setting out new deadlines for (a) filing responses to the court's identification of the pending claims in this case as set

forth in this Order; (b) conducting any further discovery necessary in this case; and (c) filing dispositive motions in this matter. Proposed revisions to the pretrial schedule prepared by the parties shall be filed no later than twenty-one days after the date of this Order.

## Conclusion

For the foregoing reasons, the claims that remain at issue in this case are those numbered in this Order as Claims 1-4, including subparts, above. The pending summary judgment motions (Doc. Nos. 130, 138, 180) are DENIED, IN PART, AS MOOT, to the extent that they seek judgment as a matter of law as to any claims other than those identified in this Order. Defendants' first motion for summary judgment (Doc. No. 130) is DENIED, IN PART, to the extent it seeks summary judgment on their PLRA exhaustion defense as to Yahtues's mental health care claims. The summary judgment motions (Doc. Nos. 130, 138, 180) are otherwise generally DENIED, without prejudice, for reasons stated in this Order.

The parties shall exchange proposed revisions to the pretrial schedule and shall file their proposed revisions no later than twenty-one days after the date of this Order. The clerk's office is directed to schedule a case management conference before the Magistrate Judge to be held within forty-

five days after the date of this Order, after which the court will issue a new scheduling order in this case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 21, 2018

cc: Malachi I. Yahtues, pro se
    John A. Curran, Esq.
    Peter A. Meyer, Esq.
    Sarah S. Murdough, Esq.