## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Malachi Yahtues

      v.                            Case No. 16-cv-174-SM

David Dionne, HCDOC Supt., et al.

### REPORT AND RECOMMENDATION

Plaintiff Malachi I. Yahtues has sued Hillsborough County Department of Corrections ("HCDC") Superintendent David Dionne and HCDC Captain Willie Scurry, claiming they violated Yahtues's constitutional rights during his pretrial detention at the HCDC between 2014 and 2016. Before the court is defendants' motion to dismiss (Doc. No. 242). Yahtues objects (Doc. No. 243) and the defendants have replied (Doc. No. 244). The defendants' motion has been referred to the undersigned magistrate judge for a Report and Recommendation. See LR 72.1. For reasons that follow, the district judge should grant the defendants' motion in part and deny it in part.

### Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the well-pleaded factual allegations in the complaint as true and construes reasonable inferences in the plaintiff's favor. Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019). To withstand a motion to dismiss, the plaintiff must make sufficient factual allegations to "state a

claim to relief that is plausible on its face." <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 570 (2007)).  This "plausibility standard
'asks for more than a sheer possibility that a defendant has
acted unlawfully.'" <u>Gilbert v. City of Chicopee</u>, 915 F.3d 74, 80
(1st Cir. 2019) (quoting <u>Iqbal</u>, 556 U.S. at 678).

   Although the complaint need not set forth detailed factual
allegations, it must provide "more than an unadorned, the-
defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at
678.  The court need not consider, therefore, "statements in the
complaint that merely offer legal conclusions couched as facts or
are threadbare or conclusory." <u>Air Sunshine, Inc. v. Carl</u>, 663
F.3d 27, 33 (1st Cir. 2011) (internal quotation marks omitted)
(quoting <u>Soto-Torres v. Fraticelli</u>, 654 F.3d 153, 158 (1st Cir.
2011)).

## **Factual Allegations**

   Yahtues, presently an inmate at the New Hampshire State
Prison, brought this action pursuant to 42 U.S.C. § 1983,
alleging that the defendants violated his federal Constitutional
and statutory rights and his rights under state law, when he was
a pretrial detainee at the HCDC from June 25, 2014 to August 1,
2016.  During the time Yahtues was at the jail, Dionne was the
Superintendent of the HCDC. Scurry was a captain at the jail with
responsibility for operations, including meals, the law library,

2

laundry, food service, housekeeping, and maintenance.  Because of his misconduct and disciplinary infractions, Yahtues was, at times, housed in the jail's various restricted units.  These restricted units included the jail's maximum-security unit, its administrative segregation unit, and its restricted housing unit.

The claims at issue in this motion are those the court delineated as 5(a)-(d) in its Order dated August 30, 2019, (Doc. No. 240), in which it permitted Yahtues to add the following claims to his lawsuit:

> 5. HCDC Superintendent David Dionne and HCDC Captain Willie Scurry violated Yahtues's Fourteenth Amendment rights to nonpunitive conditions of confinement, substantive due process, and to be protected from a substantial risk of serious harm, when they allowed and/or condoned the absence of shower curtains in the showers in the HCDC's Restricted Housing Unit ("RHU"), resulting in:
>
>> a. Yahtues's naked body being visible and exposed to the entire RHU, including female officers and staff members, when he was in the shower;
>>
>> b. Yahtues being subject to being videotaped naked in the shower by surveillance cameras;
>>
>> c. Yahtues being subjected to verbal sexual harassment by one or more inmates while watching Yahtues shower naked; and
>>
>> d. Yahtues being visible to other RHU inmates, including an inmate named Wing, a dangerous sexual predator, who masturbated while watching Yahtues shower and made sexually explicit comments to Yahtues about Yahtues's body and sexual acts in which he wanted to engage with Yahtues.

3

Id. at 2-3.

More specifically, Yahtues alleges that while the showers have "half walls" that prevent observations "at ground level" of showering inmates, those on an upper tier have an unobstructed view of the naked showering inmates, who can also be recorded by cameras "not positioned correctly."  Pl.'s Mot. to Join Claims (Doc. No. 202-1) at 4.  Yahtues also alleges that female officers and nurses would enter the RHU while he was showering. Id. at 6.

## Discussion

Before turning to the individual claims, the court's analysis starts with certain generally applicable propositions. Because Yahtues was in pretrial detention while at the HCDC, his claims arise under the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979).  Pretrial detainees do not forfeit all of their constitutional rights at the jailhouse door.  Id. at 545.  A pretrial detainee's liberty interest in non-punitive conditions of confinement is, at a minimum, "coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment."  Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005); see also Ruiz-Rosa v. Rullán, 485 F.3d 150, 155-56 (1st Cir. 2007).  Conditions may be punitive if they deny the inmate the "minimal measure of necessities

4

required for civilized living." Surprenant, 424 F.3d at 18
(citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Ultimately, though, a pre-trial detainee "simply does not
possess the full range of freedoms of an unincarcerated
individual." Bell, 441 U.S. at 546. Rather, a detainee's
rights must be balanced against "[t]he fact of confinement as
well as the legitimate goals and policies of the penal
institution." Id. The court's function in this type of case is
to seek a "mutual accommodation" between the detainee's rights
and the restrictions of jail. Id. All restrictions on inmate
rights "must be evaluated in light of the central objective of
prison administration, safeguarding institutional security." Id.
at 547. In general, the law gives wide-ranging deference to
prison officials' decisions concerning the adoption and
execution of policies and practices that in their judgment are
needed to preserve internal order and discipline and to maintain
institutional security. See Overton v. Bazzetta, 539 U.S. 126,
132 (2003) ("We must accord substantial deference to the
professional judgment of prison administrators, who bear a
significant responsibility for defining the legitimate goals of
a corrections system and for determining the most appropriate
means to accomplish them.").

To assert claims challenging the conditions of his pretrial
detention, Yahtues must allege facts demonstrating that the

identified defendants to those claims subjected him to punitive
conditions of confinement without adequate process.  Further, he
must allege facts to demonstrate that the defendants acted with
a sufficiently culpable state of mind in subjecting him to those
conditions.  Yahtues must assert specific facts to show that the
identified defendants' conduct underlying Claims 5(a)-(d) was
not merely negligent but was, at a minimum, objectively
unreasonable.  See Kingsley v. Hendrickson, 576 U.S. 389, 396
(2015) ("'[L]iability for negligently inflicted harm is
categorically beneath the threshold of constitutional due
process.'" (citation omitted) (emphasis in original)).[1]

Ultimately, when a prison regulation or policy "impinges on
an inmates' constitutional rights, the regulation is valid under
the due process clause if it is reasonably related to legitimate

_____

[1]With regard to claims other than those alleging excessive
force, the First Circuit has not stated whether a pretrial
detainee, to state a claim alleging that he was subject to
unconstitutional punishment while in pretrial detention under
circumstances such as those Yahtues asserts in this action,
would need to prove that the defendants acted with "deliberate
indifference" to a significant risk of serious harm to the
plaintiff, as is required to prove an Eighth Amendment claim, or
would only need to demonstrate that the defendants' conduct was
objectively unreasonable, the standard applied to excessive
force claims under Kingsley.  For purposes of this motion, and
absent a precedential decision to the contrary, the court will
allow Yahtues's Fourteenth Amendment claims to proceed upon a
showing that he was subject to punitive conditions of
confinement that were objectively unreasonable.  In doing so,
the court makes no finding as to what standard the court will
ultimately apply to those claims after full briefing of the
issue.

6

penological interests."  Turner v. Safley, 482 U.S. 78, 89
(1987).

The court turns next to each of Yahtues's specific claims.

A.  Claim 5(a) – Lack of Shower Curtains

The defendants argue that an assertion of being observed
naked while showering does not state a cognizable cause of
action.  Defs.' Mem. (Doc. No. 242-1) at 3.  The cases they
cite, however, are not definitive.  For example, the defendants
rely on Winston v. Auger, No. 15-204S, 2015 U.S. Dist. Lexis
150082, at *12 (D.R.I. July 6, 2015), in which the court
rejected a prisoner's claim that his privacy was violated
because "[p]risoners are entitled to very little, if any,
privacy, even when showering."  Id. (citing Sanders v. Kingston,
53 F. App'x 781, 784 (7th Cir. 2002)).  The very next sentence
in Winston, however, states that "[a]t most, inmates possess a
limited right of bodily privacy; for example, courts have
recognized the right to freedom from the involuntary viewing of
a prisoner's private parts by guards of the opposite sex."  Id.
(citing Johnson v. Tremper, 38 F. App'x 665, 666 (2d Cir.
2002)).

Other federal appellate cases upon which the defendants
rely to support their argument that Claim 5(a) must be dismissed
are also distinguishable.  For example, in Timm v. Gunter, 917
F.2d 1093 (8th Cir. 1990) the court reversed a district court's

7

ruling in the plaintiff-inmates' favor after a trial in which
the court balanced evidence pertaining to the inmates'
diminished rights and the prison's penological function.  Id. at
1101 ("Trial testimony established that in the one-year period
preceding trial, there were sixty-seven assaults on staff
members by inmates at NSP, seven of which resulted in serious
injury.")  Such a developed record is not present in this case
at this stage of the litigation.  The defendants also cite
Oliver v. Scott, 276 F.3d 736, 745 (5th Cir. 2002) for the
proposition that "permitting female guards to monitor male
inmates in bathrooms and showers was not unconstitutional."
Defs.' Mem. (Doc. No. 242-1) at 4 n.3.  But that case was
decided on a summary judgment record.  In fact, the court
recognized that "several courts of appeals . . . have found that
prisoners do possess some privacy rights," so the court
"proceed[ed] to the next step of the due process analysis,
balancing the intrusion against the state's legitimate
penological interests."  Oliver, 276 F.3d at 745 n.13.
Ultimately, the court found that the plaintiff "ha[d] not
provided sufficient summary judgment evidence to create a fact
issue about the violation of his constitutional right to
privacy."  Id. at 746.

In the motion to dismiss context, in Byrd v. Maricopa Cty.
Bd. of Supervisors, 845 F.3d 919 (9th Cir. 2017), a pretrial

detainee challenged a county jail's policy of allowing, <u>inter alia</u>, female guards to observe male detainees' bathroom and shower use.  <u>Id.</u> at 921.  The court reversed the district court's dismissal of the complaint under both a right to privacy analysis and a cruel and unusual punishment analysis.[2]  Under both legal rubrics, the court held that the lack of a record as to the <u>Turner</u> factors militated against dismissal.  <u>Id.</u> at 923-25.  The court concluded that "[i]t may be that the prison's  . . . policy of female guards observing male pretrial detainees is necessary to ensure security and provide equal work opportunities in the prison.  But [this is] just conjecture at this point. And conjecture is not enough to dismiss a complaint under section 1915A."  <u>Id.</u> at 924-25 (citations omitted).  <u>See also</u> <u>Kent v. Johnson</u>, 821 F.2d 1220, 1227 (6th Cir. 1987) ("While it is true that no federal court has yet held that such conditions violate the eighth and fourteenth amendments, we do not think it impossible for this plaintiff to make such a showing in this particular case."); <u>Lee v. Downs</u>, 641 F.2d 1117, 1119 (4th Cir. 1981) ("Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of

---

[2]Although the complaint in <u>Byrd</u> was dismissed on preliminary review, <u>see</u> 28 U.S.C. § 1915A, the standard of review is the same as the court utilizes to decide a motion to dismiss under Fed. R. Civ. P. 12(b)(6). <u>See</u> <u>Hernandez-Cuevas v. Taylor</u>, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Iqbal, 556 U.S. at 678 (2009)).

them in the presence of people of the other sex may be
especially demeaning and humiliating.").

In the absence of binding First Circuit authority, the
court is persuaded that the approach taken by the courts in Byrd
and Kent is the sounder course in the context of a motion to
dismiss. All that is required is that plaintiff "state a claim
to relief that is plausible on its face." Iqbal, 556 U.S. 662,
678 (2009).  Claim 5(a) has adequately done so, and therefore
the district court should deny the defendants'' motion to
dismiss as to that claim.

B.  Claim 5(b) – Videotaped While Naked

Plaintiff's next claim is that his rights were violated by
the presence of surveillance cameras capable of videotaping him
in the bathroom and shower.  Specifically, he alleges that
"[c]ameras that film the unit, if not positioned correctly, can
record inmates showering."  Pl.'s Mot. to Join Claims (Doc. No.
202-1) at 3-4.

Defendants again argue that this claim fails to set forth a
constitutionally cognizable claim.  But once again, the claim
cannot be dismissed on the current record, as the court cannot
evaluate the relationship between the jail's video policy and
its penological concerns.  Turner, 482 U.S. at 89.  Cf. Garrett
v. Thaler, 560 F. App'x 375, 380 (5th Cir. 2014) (affirming
district court's dismissal of inmates video surveillance claim

10

after hearing and receipt of evidence); Hmied v. Nelson-Coleman

Corr. Ctr., No. 18-3449, 2018 WL 4922381, at *19, 2018 U.S.

Dist. LEXIS 175369, at *50-51 (E.D. La. Aug. 15, 2018)

(recommending dismissal of inmate's video surveillance claim

after receiving testimony and evidence about jail security

issues), R&R adopted, 2018 WL 4909898, at *1, 2018 U.S. Dist.

LEXIS 174189, at *1 (E.D. La. Oct. 10, 2018); Warren v. Gusman,

No. 16-15046, 2017 WL 1373875, at *18, 2018 U.S. Dist. LEXIS

57468, at *50 (E.D. La. Mar. 10, 2017) (recommending dismissal

of inmate's video-related claim after receiving testimony and

evidence) R&R adopted, 2017 WL 1355709, at *1, 2017 U.S. Dist.

LEXIS 56449, at *1-2 (Apr. 13, 2017); Kemp v. Black Hawk Cty.

Jail, No. C15-2094-LRR, 2017 WL 581316, at *9, 2017 U.S. Dist.

LEXIS 19884, at *29 (N.D. Iowa, Feb. 13, 2017) (granting summary

judgment to defendants on inmates video-related claim "because

the evidence shows that the Jail Defendants' reasonable use of

video cameras promotes the security interests of jailers and

inmates."), aff'd sub nom. Kemp v. Waterloo Police Dep't, 700 F.

App'x 558 (8th Cir. 2017).

    Accordingly, in light of the undeveloped record, the

district court should deny the defendants' motion to dismiss as

to claim 5(b).

C.  Claims 5(c) & 5(d) – Verbal Harassment by Inmate

Yahtues next asserts that he was subject to verbal sexual harassment by a fellow inmate -- a person named Wing -- who watched him shower naked while making lewd comments and gestures.  Pl.'s Mot. to Join Claims (Doc. No. 202-1) at 9-10. The court recommends that the district judge dismiss these claims.

To the extent Yahtues is claiming that the defendants are liable for harassment by other inmates, this court has previously noted that, "[a]cts of verbal harassment, however reprehensible, unprofessional, or inappropriate, do not violate the federal constitution." Levesque v. State, No. 09-CV-248-JD, 2010 WL 2367346, at *35, 2010 U.S. Dist. LEXIS 57249, at *103 (D.N.H. May 12, 2010), R&R adopted, 2010 WL 2367231, 2010 U.S. Dist. LEXIS 57278 (D.N.H. June 9, 2010), R&R adopted sub nom., Levesque v. N.H State Prison, Secure Psychiatric Unit, No. 10-CV-41-JD, 2010 WL 2794072, 2010 U.S. Dis. LEXIS 71345 (D.N.H. July 13, 2010); see also  Saunders v. Strafford Cty. Dep't. of Corr., No. 15-CV-225-JD, 2015 WL 4634949, *1, 2015 U.S. Dist. LEXIS 101067, at *2-3 (D.N.H. June 26, 2015) (and cases cited therein) (rejecting inmate's verbal harassment claim), R&R approved 2015 WL 4628734, 2015 U.S. Dist. LEXIS 102715 (D.N.H. July 31, 2015).

12

To the extent plaintiff is alleging that the defendants
failed to protect him from the above harassment, he nevertheless
fails to state a claim because he has not asserted facts
sufficient to demonstrate that the defendants failed to protect
him from a substantial risk of serious harm.  See Cunningham v.
Martinez, No. 1:19-cv-1508-EPG(PC), 2020 WL 2126757, at *3, 2020
U.S. Dist. LEXIS 79098, at *8-9 (E.D. Cal. May 5, 2020); Adams
v. Landry, No. 2:17-cv-357-JAW, 2019 WL 1387685, at *7, 2019
U.S. Dist. LEXIS 51302, at *18-20 (D. Me. Mar. 27, 2019), R&R
adopted sub nom., Adams v. Bailey, 2019 WL 2016520, 2019 U.S.
Dist. LEXIS 76708 (D. Me. May 7, 2019).

Accordingly, the district judge should grant defendants'
motion to dismiss with respect to claims 5(c) and (d).

D.   PLRA Exhaustion

As an alternative to dismissal for failure to state a
claim, defendants argue that plaintiff has not satisfied the
exhaustion requirement imposed by the Prison Litigation Reform
Act of 1995.  See 42 U.S.C. § 1997e(a).  The failure to exhaust
is an affirmative defense. See Ramos v. Patenaude, 640 F.3d 485,
488 (1st Cir. 2011). An affirmative defenses may properly be the
subject of a motion to dismiss if the facts alleged in the
complaint, or matters susceptible of judicial notice,
conclusively establish the elements of the affirmative defense.
See Gray v. Evercore Restructuring LLC, 544 F.3d 320, 324 (1st

13

Cir. 2008).  In this case, the defendants have not shown that PLRA exhaustion is an issue properly decided on a motion to dismiss.  Accordingly, the district judge should deny the motion to dismiss on PLRA exhaustion grounds as to Claims 5(a) and 5(b) II, without prejudice to defendants' ability to raise the issue on summary judgment.

## Conclusion

For the foregoing reasons, the district court should grant defendants' motion to dismiss (Doc. No. 242) with respect to Claims 5(c) and 5(d), and deny it in all other respects.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

August 17, 2020

cc:  Pro Se Party and Counsel of Record